IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Gregory C. Krug,                        )       C/A No.: 1:13-1409-DCN-SVH
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )
                                        )       REPORT AND RECOMMENDATION
Victor Loranth, John R. Owen, and       )
David Crickard,                         )
                                        )
                    Defendants.         )
_____    )

     Plaintiff Gregory C. Krug, proceeding pro se and in forma pauperis, filed this action seeking compensatory damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] At the time of the incidents giving rise to the complaint, Plaintiff was incarcerated at the Federal Correctional Institution in Williamsburg, South Carolina ("FCI-Williamsburg"), a facility of the Bureau of Prisons ("BOP").[2] Plaintiff sues clinical director Dr. Victor Loranth, former warden John R. Owen, and unit manager David Crickard ("Defendants"), alleging violations of his constitutional rights.

     This matter comes before the court on Defendants' motion to dismiss, or in the alternative, motion for summary judgment.[3] [Entry #35]. Pursuant to *Roseboro v.*

---

[1] *Bivens* established that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits.

[2] Plaintiff is currently incarcerated at Metropolitan Detention Center-Los Angeles.

[3] Because the court has considered matters outside of the pleadings, the undersigned considers the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

*Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #36]. The motion having been fully briefed [Entry #42, #49], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been referred to the undersigned for all pretrial proceedings. Because this motion is dispositive, this report and recommendation is entered for review by the district judge. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that the district judge grant Defendants' motion for summary judgment.

I.     Factual and Procedural Background

Plaintiff alleges that he arrived at FCI-Williamsburg in March 2011. [Entry #17-1 at 2]. Plaintiff contends that shortly after his arrival, he notified Loranth that he needed a podiatrist to make him custom arch supports and a vascular surgeon to treat his peripheral vascular disease ("PVD"). *Id.* at 2–3. Plaintiff states that Loranth never authorized treatment by a podiatrist and only provided him with store-bought insoles. *Id.* at 3. Plaintiff alleges that Loranth authorized him to be seen by a vascular surgeon "who recommended an in-house, laser procedure be performed on [Plaintiff's] left leg." *Id.* Plaintiff claims that he asked the vascular surgeon for a copy of the test results on which he based his recommendation, and the surgeon refused to give him the results. *Id.* at 4. Plaintiff alleges that he told Loranth that he would not agree to the recommended procedure until he saw the test results and received a second opinion. *Id.* Plaintiff claims

Loranth promised him that he would promptly be seen by another vascular surgeon. *Id.* Plaintiff contends that he spoke with Loranth during two subsequent clinic visits, and he was again promised that he was on the list to be seen by another vascular surgeon. *Id.* at 5. Plaintiff alleges that he realized Loranth never intended to allow him to see a second vascular surgeon, and he brought this to Owen's attention. *Id.* Plaintiff contends that Owen told him that he was "on the list." *Id.* Plaintiff claims he left FCI-Williamsburg on June 15, 2012, without having received any treatment for his PVD or being seen by a podiatrist. *Id.* Additionally, Plaintiff alleges that Crickard denied his requests to be transferred to another housing unit. [Entry #17 at 1]. Plaintiff argues that Crickard's denial of his requests increased the distance he had to walk, exacerbating the amount of pain he experienced. *Id.* at 2. Plaintiff seeks monetary damages. [Entry #17-1 at 6].

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

3

made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.    Analysis

1.    Monetary Relief in Official Capacity Claims

Defendants assert that the court lacks subject matter jurisdiction to the extent Plaintiff sues them in their official capacities for monetary relief. [Entry #35 at 3–4]. Under the principle of sovereign immunity, individuals may not sue the United States or its agencies without their consent. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (declining to extend *Bivens* to permit suit against a federal agency); *Global Mail Ltd. v.*

*U.S. Postal Service*, 142 F.3d 208, 210 (4th Cir. 1998) (finding that a federal governmental entity is entitled to sovereign immunity unless Congress waives that immunity and consents to suit). A suit against Defendants in their official capacities would be tantamount to a suit against the government itself, *Dugan v. Rank*, 372 U.S. 609, 620 (1963), and "the United States has not waived sovereign immunity in suits claiming constitutional torts." *Reinbold v. Evers*, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). The undersigned recommends that the district judge dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

   2. Medical Indifference[4]

  Plaintiff alleges that Loranth and Owen denied him proper medical treatment for his PVD and foot issues. [Entry #17-1]. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

---

[4] In his response, Plaintiff clarified that he is not asserting any claims for negligence or medical malpractice. [Entry #42 at 28–29]. Therefore Defendants' arguments regarding such claims are moot.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Id.* at 105–06.

The Fourth Circuit also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182–83 (4th Cir. 1986). A significant delay in medical treatment may give rise to a constitutional violation, but only if the delay results in substantial harm to the patient. *Webb v. Hamidullah*, 281 Fed. Appx. 159, 166 (4th Cir. 2008). Substantial harm may be most persuasively demonstrated where the delay in treatment causes further injury to the inmate, but the requirement may also be met where the delay causes unnecessarily prolonged pain and suffering. *Webb v. Driver*, 313 Fed. Appx. 591, 593 (4th Cir. 2008).

Defendants first argue that Plaintiff's foot diagnoses are not serious medical needs. In the alternative, Defendants argue that to the extent Plaintiff's foot issues are serious medical needs, they provided Plaintiff with adequate medical care. [Entry #35 at 29–34]. Loranth states that Plaintiff saw a prosthetics/orthotics specialist on August 17, 2011,

regarding his foot complaints, and the specialist recommended that Plaintiff receive orthopedic boots and custom molded inserts. [Entry #35-6 at 5–6]. Loranth contends that Plaintiff missed his September 14, 2011, appointment to receive the boots and inserts, and instead received these items at his November 1, 2011, appointment. *Id.* at 6. Plaintiff claims that he never wanted to see a prosthetics/orthotics specialist and states that the inserts he received were designed in the USA and made in China. [Entry #49-1 at 1–2]. Plaintiff admits that the inserts were a slight improvement over previous models, but argues that he still experienced great pain when he was required to walk more than a few meters. *Id.*

Although Plaintiff argues that he needed to be treated by a podiatrist, he does not offer any evidence that establishes that treatment by a podiatrist was medically necessary. While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326, 330 n. 2 (S.D. Ga. 1994). The Constitution requires that prisoners be provided with a certain minimum level of medical treatment, but it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Therefore, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs with regard to his foot issues.

Defendants concede that Plaintiff's PVD is a serious medical need; however, they argue that Plaintiff has not shown that they were deliberately indifferent to his medical issues. [Entry #35 at 30–31].  Loranth states that Plaintiff received treatment for his PVD

and the medical problems with his feet on at least 28 occasions. [Entry #35-6 at 14, #35-7]. Loranth claims that Plaintiff had two consultations with a vascular surgeon who recommended that Plaintiff have either vein ablation or vein stripping. [Entry #35-6 at 12–13; #35-7 at 52–54, 65–68]. Plaintiff refused this recommended treatment and requested a second opinion. [Entry #17-1 at 4]. Loranth states that he approved Plaintiff's request to be seen by another vascular surgeon, but Plaintiff left FCI-Williamsburg before his scheduled appointment.  [Entry #35-6 at 13–14]. Plaintiff argues that he repeatedly told BOP employees that he wanted to see a different vascular surgeon once he realized he would not receive the results of the venous test. [Entry #49-1 at 1]. Plaintiff states that BOP employees never told him that he would be given the "actual graph of [his] venous test" and admits that he may have received the vascular surgeon's September 8, 2011, report that summarized the results of the "lower extremity venous evaluation." [Entry #49-1 at 1; #35-7 at 65–67].

Plaintiff has failed to demonstrate a claim of deliberate indifference with regard to his PVD. Although Plaintiff complains that he did not see a second vascular surgeon prior to leaving FCI-Williamsburg, Plaintiff has not offered any evidence that he suffered any harm from this purported delay in receiving treatment. The record reflects that FCI-Williamsburg medical staff and consultants assessed and treated Plaintiff's PVD throughout his incarceration. The fact that Plaintiff disagrees with the course of his medical treatment while at FCI-Williamsburg is insufficient to establish medical indifference. See *Thomas*, 2011 WL 442053 at *3*; *Jackson*, 846 F.2d at 817. The

undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim.

### 3. Failure to Transfer

Plaintiff contends that Crickard's denial of his requests to be transferred to a different housing unit "deliberately and maliciously exasperated the quantity of pain" he would have otherwise suffered. [Entry #17 at 1–2]. Crickard states that Plaintiff was assigned to a lower bunk, on a lower tier, in a lower unit, and avers that this assignment met his medical restrictions. [Entry #35-5 at 2]. Crickard claims he told Plaintiff he would have to see medical staff to be moved to a different housing unit for medical reasons. *Id.* Plaintiff argues that Crickard did not need approval to transfer him to a different housing unit. [Entry #49 at 10]. Plaintiff states that he was almost always the last inmate to arrive at his housing unit after yard recall and claims that Crickard knew or should have known Plaintiff's late arrival was due to his medical problems. [Entry #49 at 10; #49-1 at 2].

There is no constitutional right for a state or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975). The placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016–17 (4th Cir. 1984). Plaintiff has not offered any evidence that his housing assignment was inappropriate given his

listed medical restrictions or that he suffered any negative consequences from being the last inmate to arrive at his housing unit. Because Plaintiff has not shown how his housing assignment violated his constitutional rights, the undersigned recommends Defendants be granted summary judgment on Plaintiff's failure to transfer claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment [Entry #35] be granted and this case be dismissed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 31, 2014                                    Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).