**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| GREGORY C. KRUG, )<br>)<br>  Plaintiff, )<br>)<br>vs. )<br>)<br>VICTOR LORANTH, JOHN R. OWEN, )<br>and DAVID CRICKARD, )<br>)<br>  Defendants. )<br>_____) | No. 1:13-cv-01409-DCN<br><br>**ORDER** |

This matter is before the court on Magistrate Judge Shiva V. Hodge's Report and Recommendation ("R&R") that this court grant the motion for summary judgment filed by defendants Dr. Victor Loranth ("Dr. Loranth"), John R. Owen ("Owen"), and David Crickard ("Crickard"). Plaintiff Gregory C. Krug ("Krug") filed written objections to the R&R. For the reasons set forth below, the court adopts the R&R and grants defendants' motion for summary judgment.

### I. BACKGROUND[1]

Krug is an inmate within the Bureau of Prisons who was incarcerated at the Federal Correctional Institution in Williamsburg, South Carolina ("FCI-Williamsburg") at all times relevant to this lawsuit. Compl. ¶ 1.[2] At that time, Dr. Loranth was the clinical director at FCI-Williamsburg, Owen was the warden, and Crickland was a unit

---

[1] The facts are considered and discussed in the light most favorable to Krug, the party opposing summary judgment. See Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[2] Krug amended his complaint in a letter which alleges a cause of action against Crickland and incorporates the original complaint. For ease of reference, the court will cite to facts and allegations from the original complaint as "Compl.," and cite to facts and allegations concerning Crickland as "Am. Compl."

1

manager.  Compl. ¶ 2; Am. Compl. 1.  Krug alleges that shortly after he arrived at FCI-Williamsburg, he informed Dr. Loranth of medical needs that required treatment from a vascular surgeon for peripheral vascular disease ("PVD") and from a podiatrist who could make him custom arch supports.  Compl. ¶ 5.  Dr. Loranth never authorized treatment from a podiatrist and only provided Krug with store-bought insoles.[3]  Id. ¶ 6.  Dr. Loranth did authorize Krug to see a vascular surgeon, who recommended that "an in-house, laser procedure be performed on Krug's left leg."  Id.  When Krug requested a copy of his test results, the vascular surgeon refused to give him those documents.  Id. ¶ 7.  Krug told Dr. Loranth that he would not agree to the recommended procedure until he received the test results and could obtain a second opinion.  Id. ¶ 8.  Krug claims that Dr. Loranth promised him that he would promptly be seen by another vascular surgeon.  Id.

Krug met with Dr. Loranth during at least two subsequent visits to the prison's clinic, and each time Dr. Loranth promised him that he "was on the list" to be seen by another vascular surgeon.  Id. ¶ 9.  Krug brought the issue to Owen's attention when he realized that Dr. Loranth "had never intended to permit [him] to be seen by another vascular surgeon."  Id. ¶ 10.  Owen told Krug that he was "on the list," but Krug left FCI-Williamsburg on June 15, 2012 without being seen by a podiatrist or a second vascular surgeon.  Id.  Additionally, Krug alleges that Crickard denied his requests to transfer units, which would have significantly reduced the distance that Krug had to walk every day.  Am. Compl. 1.  Krug claims that Crickard's denials exacerbated his pain.  Id. at 1-2.

---

[3] Elsewhere, Krug describes the insoles as "custom arch supports."  Pl.'s Objections 6-7.

Krug filed the present action on May 24, 2013. He filed an amended complaint on January 5, 2013, asserting a cause of action pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), which established a direct cause of action against federal officials for the violation of federal constitutional rights. On October 15, 2013, defendants filed a motion to dismiss or, in the alternative, for summary judgment. Krug filed a response on December 23, 2013. The magistrate judge issued an R&R on July 31, 2014, recommending that this court grant defendants' motion. Krug filed objections to the R&R on August 18, 2014. This matter is now ripe for the court's review.

## II.  STANDARDS

### A.  Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the report of the

magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B.     Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Id. at 255.

### C.     Pro Se Plaintiff

Plaintiff is proceeding pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id. Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

## III.   DISCUSSION

Krug objects to the R&R on six grounds, alleging the magistrate judge erred in: (1) dismissing the claims as to the defendants in their official capacities; (2) finding that

Krug has not offered any evidence that treatment by a podiatrist was medically necessary; (3) reciting several facts which are false; (4) finding that Krug has failed to demonstrate a claim of deliberate indifference with regard to his PVD; (5) finding that Krug has not offered any evidence that he suffered harm from the delay in receiving PVD treatment; and (6) finding that Crickard should be granted summary judgment. The court will first discuss background law on claims of deliberate indifference to serious medical needs and then consider each of Krug's objections in turn.

In Estelle v. Gamble, the Supreme Court recognized a federal cause of action for deliberate indifference to serious medical needs. 429 U.S. 97, 104 (1976). The Court wrote that the claim is cognizable "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. at 104-05; see Farmer v. Brennan, 511 U.S. 825, 834 (1994) (describing actions under 42 U.S.C. § 1983 against state officials as "counterparts" to Bivens actions against federal officials). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 319 (1986) (holding that deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety").

A plaintiff must satisfy both a subjective and an objective component to show the violation of a constitutional right. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). To prevail on a claim of constitutionally inadequate medical care, a plaintiff must

5

demonstrate "that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Id. (citing Estelle, 429 U.S. at 104).

First, a plaintiff must show that the injury was objectively serious. Farmer, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal citation omitted).

A plaintiff must also satisfy the subjective component – deliberate indifference. Id. An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer, 511 U.S. at 837. The Fourth Circuit has identified two aspects of an official's state of mind that must be shown to satisfy the subjective component. First, <u>actual knowledge of the risk of harm</u> to the inmate is required. Iko, 535 F.3d at 241 (citing Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001)) (emphasis in original); see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officers <u>should have</u> recognized [a substantial risk of harm]."). A factfinder may conclude that an officer knew of a substantial risk from the very fact that the risk was obvious, but it is not enough that a reasonable officer would have found the risk to be obvious. Parrish, 372 F.3d at 303 (internal citations omitted). The risk of injury must be so "obvious that the fact-finder could conclude that the [officer] <u>did</u> know of it because he could not have failed to know of it." Id. (internal quotations and citations omitted) (emphasis in original). Second, the officer "must also have 'recognized that <u>his actions were insufficient</u>' to mitigate the risk of harm to the inmate arising from his medical needs."

Iko, 535 F.3d at 241 (citing Parrish, 372 F.3d at 303) (emphasis in original).  A factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances.  Parrish, 372 F.3d at 303.

The court will analyze each alleged instance of deliberate indifference to determine whether the facts make out a violation of a constitutional right.  When assessing the constitutionality of defendants' actions, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion."  Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

### 1.     Defendants' Official Capacity

Krug first objects to the magistrate judge's recommendation that the court dismiss his claims for monetary damages against defendants in their official capacities.  Pl.'s Objections 1.  Krug argues that he never brought any claim against defendants in their official capacities.  Id.  To the extent that Krug did not bring his complaint against defendants in their official capacity, any error by the magistrate judge in interpreting his complaint as such is harmless.  Additionally, contrary to Krug's assertions, the magistrate judge did not take advantage of his failure to place "in their individual capacities" into the caption of his complaint as a reason to dismiss the entire case.  In fact, the R&R continued to analyze the merits of the medical indifference claims as brought against defendants in their individual capacities.  R&R 5-10.

Krug's first objection fails.

### 2. Deliberate Indifference – Podiatrist Treatment

Krug's second objection is that the magistrate judge erred by stating that he had not offered any evidence establishing that treatment by a podiatrist was medically necessary. Pl.'s Objections 6. Krug argues that his declaration – in which he states that the custom arch supports he was fitted for were a "slight improvement" but he continued to be in a "massive quantity of pain" when he walked – proves that treatment by a podiatrist was medically necessary. Id. at 6-7.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Thomas v. Anderson City Jail, No. 6:10-cv-3270, 2011 WL 534392, at *1 (D.S.C. Feb. 8, 2011) (quoting Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)); see Brown v. Thompson, 868 F. Supp 326 (S.D. Ga. 1994) ("Providing medical care is not discretionary . . . . The type and amount of care, however, is purely discretionary."). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. Wright v. Moore, No. 8:12-cv-1456, 2013 WL 4522903, at *6 (D.S.C. Aug. 26, 2013); see Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." (internal quotation marks and citation omitted)); Walker v. Peters, 863 F. Supp. 671 (N.D. Ill. 1994) ("[M]ere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice.")

8

The evidence in this case, which Krug does not dispute, shows that he was seen by the medical staff at FCI-Williamsburg at least 28 times for his PVD and problems with his feet, and, on 16 of those visits, was examined by Dr. Loranth. Loranth Decl. ¶ 37, 39. Krug was seen by a prosthetics and orthotics specialist for his foot problems who created custom shoes with custom molded inserts. Id. ¶¶ 14, 19. The medical staff determined that it was not medically necessary to see a podiatrist. Id. ¶ 19. In Dr. Loranth's declaration, he indicated that Krug received adequate medical care for the problems with his feet while at FCI-Williamsburg. Id. ¶ 36.

Krug's claim of deliberate indifference fails as it relates to the problems with his feet because the record shows that medical staff repeatedly saw and treated Krug for complaints regarding his feet. See Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Singletary v. Fallen, No. 0:11-cv-543, 2012 WL 368375 (D.S.C. Jan. 17, 2012) report and recommendation adopted, 2012 WL 368364 (D.S.C. Feb. 3, 2012) (granting summary judgment to prisoner alleging deliberate indifference because medical records showed that prisoner was seen repeatedly for his complaints regarding foot pain). Krug does not have a claim against defendants simply because he disagrees with the course of treatment he received while at FCI-Williamsburg. See Nelson, 603 F.3d at 449. At most, Krug's claims allege negligence or medical malpractice, which are not actionable as a constitutional claim. Lamb v. Lieber Corr. Inst. Med. Staff, No. 8:09-cv-1806, 2009 WL 2524697, at *3 (D.S.C. Aug. 14, 2009).

Krug's second objection fails.

### 3. Errors of Fact

Krug next objects to the magistrate judge's recitation of two facts he claims are false. Pl.'s Objections 7. First, Krug argues that the magistrate judge was incorrect when he stated that Krug had received treatment for his PVD and medical problems with his feet on at least 28 occasions. See Pl.'s Objections 7-8; R&R 7-8. Krug contends that while he "may have been seen on 28 occasions," he only received treatment once, when he had custom molded inserts made for him. Pl.'s Objections 8. This is at best a quibble over semantics that does not alter the magistrate judge's analysis. Krug also asserts that the magistrate judge incorrectly stated that Krug "refused [the vascular surgeon's] recommended treatment and requested a second opinion." See Pl.'s Objections 8; R&R 8. Krug claims that the magistrate judge ignored the fact that he chose to reject the recommended treatment in part because the vascular surgeon did not allow him to see the test results. Pl.'s Objections 8-9. Notwithstanding the fact that the magistrate judge explicitly discussed the reasons Krug refused treatment, R&R 2, it is again unclear what effect Krug's nitpicking has on the magistrate judge's ultimate conclusion.

Krug's third objection fails.

### 4. Deliberate Indifference – PVD

Krug's fourth and fifth objections involve his deliberate indifference claim regarding his PVD. Krug argues that the magistrate judge improperly found that the record reflects that he was assessed and treated by the FCI-Williamsburg medical staff for PVC and erred in finding that he had not offered any evidence that he suffered harm from the delay in receiving treatment for PVD. Pl's Objections 10-11.

The record indicates that Krug received extensive treatment for his PVD while at FCI-Williamsburg. Shortly after arriving, he was issued a pair of knee-high compression stockings for his PVD. Loranth's Decl. ¶ 4. On June 6, 2011, a vascular surgeon examined Krug and recommended that he be more compliant with wearing his support stockings and that he undergo a bilateral lower extremity venous reflux evaluation. Id. ¶ 11. Krug saw the vascular surgeon again for a follow-up on September 8, 2011. Id. ¶ 15. The vascular surgeon recommended either endovenous laser ablation therapy or an open vein stripping. Id. Krug indicated that he would think about it, id., and at some time later informed the FCI-Williamsburg medical staff that he was suspicious of the procedure because he was unable to see his test results. Id. ¶ 21. On January 18, 2012, Krug was issued "one pair of TED hose knee-length stockings." Id. ¶ 25. On March 7, 2012, Dr. Loranth prescribed Krug medication and provided him with a pair of crutches. Id. ¶ 28. At the same time, Dr. Loranth told Krug that he would be sent to another vascular surgeon for a second opinion. Id. In May, Dr. Loranth noted that a second vascular surgeon had been contacted and Krug had an appointment scheduled for the next month. Id. ¶ 32. However, Krug was transferred out of FCI-Williamsburg prior to his schedule appointment. Id. ¶ 33. Dr. Loranth opined that Krug received adequate medical care and treatment for his PVD while at FCI-Williamsburg. Id. ¶ 36.

Once again, Krug's complaint amounts to a disagreement with the treatment he received for PVD while at FCI-Williamsburg. As discussed at length above, such disagreement is insufficient to state a claim for a constitutional violation. See Nelson, 603 F.3d at 449. The record indicates that Krug was given compression stockings for his PVD, was examined multiple times by the medical staff at FCI-Williamsburg, was

examined by a vascular surgeon, and was scheduled to get a second opinion from another vascular surgeon.  See Dulany, 132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Singletary, 2012 WL 368375 (D.S.C. Jan. 17, 2012) (granting summary judgment to prisoner alleging deliberate indifference because medical records showed that prisoner was seen repeatedly for his complaints regarding foot pain).  Because Krug has failed to advance evidence of treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), defendants are entitled to summary judgment on his claim of deliberate indifference with regard to his PVD.

Krug's fourth and fifth objections fail.

### 5.     Deliberate Indifference – Failure to Transfer

For his final objection, Krug broadly objects to the magistrate judge's handling of his deliberate indifference claim against Crickard for his failure to transfer Krug to a different housing unit.  Pl.'s Objections 13-14.

Non-medical prison employees can be found to have acted with deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104-05.  To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison

physician's misconduct.  See Miltier, 896 F.2d at 854.  Moreover, non-medical prison personnel are entitled to rely on the expertise of health care providers.  See Iko, 535 F.3d at 242 ("'If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" (alteration in original) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)); Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (holding non-medical prison officials were not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

     Here, Krug was assigned to a "lower unit, lower tier, and lower bunk to meet his medical restrictions."  Crikard Aff. ¶ 6 (emphasis added).  Crickard informed Krug that he would "have to see medical staff in order to get approval to be changed to a different housing unit for medical reasons."  Id.  As a non-medical prison officer, Crikard was justified in relying on medical staff regarding the proper course of treatment for Krug.  See, e.g., Iko, 535 F.3d at 242.  Without evidence that the medical staff felt it necessary to move Krug to a different unit, there is insufficient evidence that Crikard's failure to transfer units was so patently inadequate as to be deliberately indifferent to Krug's medical needs.[4]  See Robbins v. Black, 351 F. App'x 58, 63 (6th Cir. 2009) (holding that

---

[4] Moreover, as noted by the magistrate judge, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials."  Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002).

actions of non-medical staff who, following a doctor's instruction, failed to assign inmate to a bottom bunk did not constitute deliberate indifference); <u>Brown v. Randle</u>, 2014 WL 2533213, *9 (N.D. Ill. June 5, 2014) (finding that non-medical prison officer's decision not to reassign inmate to a unit that "would have been more comfortable on account of . . . air conditioning, less crowded nature, and easy access to daily medications" was not deliberate indifference).

Krug's final objection fails.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED**.

                                                                                    *[signature]*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 29, 2014**
**Charleston, South Carolina**